# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERAD TAGLIABUE,<br><br>   Plaintiff,<br><br>  v.<br><br>J.C. PENNEY CORPORATION, INC.,<br><br>   Defendant. | Case No.  1:15-cv-01443-SAB<br><br>ORDER GRANTING IN PART DEFENDANT'S MOTION TO COMPEL ARBITRATION, VACATING DECEMBER 16, 2015 HEARING, AND REQUIRING PARTIES TO FILE SUPPLEMENTAL BRIEFING<br><br>(ECF Nos. 18, 22, 23) |

   Currently before the Court is Defendant's motion to compel arbitration.  The Court, having reviewed the record, finds this matter suitable for decision without oral argument.  See Local Rule 230(g).  Accordingly, the previously scheduled hearing set on December 16, 2015, will be vacated and the parties will not be required to appear at that time.  For the reasons discussed below, the motion is granted as to the Plaintiff's individual and class action claims. However, the Court shall defer ruling on the issue of whether Plaintiff is required to arbitrate the Private Attorney General Act ("PAGA"), Cal. Lab. Code § 2698 et seq. claims until additional briefing is received from the parties.

## I.

## PROCEDURAL HISTORY

   On August 20, 2015, Plaintiff Jerad Tagliabue, on behalf of himself and all others

1  similarly situated, filed this action in the Superior Court of California in the County of Stanislaus

2  alleging employment related violations of state law.  (ECF No. 1-1 at 4-24.[1])  On September 23,

3  2015, Defendant removed the action to the Eastern District of California pursuant to the Class

4  Action Fairness Act, 28 U.S.C. § 1332(d), and 28 U.S.C. § 1441(a).[2]  (ECF No. 1.)  On October 13,

5  2015, Plaintiff amended his complaint to allege an additional claim under the PAGA.

6      On October 30, 2015, Defendant filed a motion to compel arbitration.  (ECF No. 18.)

7  Plaintiff filed an opposition to the motion on December 2, 2015.  (ECF No. 22.)  On December

8  9, 2015, Defendant filed a reply.  (ECF No. 23.)

9                                    **II.**

10                          **LEGAL STANDARD**

11      In 1925 the Federal Arbitration Act ("FAA") was enacted in response to judicial hostility

12  to arbitration agreements.  AT&T Mobility LLC v. Concepcion (Concepcion), 563 U.S. 333, 339

13  (2011).  The primary provision of the FAA provides that a contract which evidences an intent to

14  settle a controversy by arbitration "shall be valid, irrevocable, and enforceable, save upon such

15  grounds as exist at law or in law for the revocation of any contract."  Concepcion, 563 U.S. at

16  339 (quoting 9 U.S.C. § 2).  The Supreme Court has found that "Section 2 is a congressional

17  declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state

18  substantive or procedural policies to the contrary[,]" and the effect is to create a body of federal

19  substantive law of arbitrability.  Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S.

20  1, 24 (1983).  The FAA places arbitration agreements on an equal footing with other contracts

21  and requires the court to enforce such an agreement according to its terms.  Rent-A-Center,

22  West, Inc. v. Jackson, 561 U.S. 63, 67 (2010).  "A party aggrieved by the alleged failure, neglect,

23  or refusal of another to arbitrate under a written agreement for arbitration may petition any

24  United States district court . . . for an order directing that such arbitration proceed in the manner

25  provided for in such agreement."  9 U.S.C. § 4.

26  _____

27  [1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

28  [2] The parties have consented to the jurisdiction of the magistrate judge.  (ECF Nos. 12, 15.)

"In deciding whether a dispute is arbitrable, courts must consider: (1) whether a valid agreement to arbitrate exists; and (2) whether the scope of that agreement to arbitrate encompasses the claims at issue." Levin v. Caviar, Inc., __ F.Supp.3d __, 2015 WL 7529649, at *2 (N.D. Cal. November 16, 2015) (citing Chiron Corp. v. Ortho Diagnostic Sys., 207 F.3d 1126, 1130 (9th Cir.2000)).  If the party seeking to compel arbitration establishes these two factors then the court must compel arbitration.  Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) ("By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.")

### III.

### ANALYSIS

Defendant seeks to compel arbitration based upon two employment contracts under which Plaintiff was employed.  Plaintiff does not challenge that the employment agreement requires arbitration of the individual or class action claims at issue in this action.  Plaintiff contends that arbitration should not be required because he did not sign the employment contracts, the contracts are unconscionable, and Plaintiff cannot be compelled to arbitrate the PAGA claims.

**A.      The Parties Agreed to Arbitrate Employment Disputes**

Initially, the Court considers whether there was a valid agreement between the parties to arbitrate employment disputes.

1.      Signature on Arbitration Agreement

First, Plaintiff challenges Defendant's evidence that there was a contract on the ground that it is not his physical signature on the documents.  Plaintiff contends that he does not remember signing the agreement and argues that Defendant has not met its burden of proof to establish the validity of the electronic signature.

To the extent that Plaintiff challenges the lack of a physical signature on the document, California has enacted the Uniform Electronic Transaction Act which became effective on January 1, 2000.  Cal. Civ. Code § 1633.1 et seq.  The Act provides that a "signature may not be

1  denied legal effect or enforceability solely because it is in electronic form[,]" and specifies that

2  "[a] contract may not be denied legal effect or enforceability solely because an electronic record

3  was used in its formation." Cal. Civ. Code § 1633.7(a). Plaintiff's argument that the contract is

4  not enforceable because it does not contain his physical signature is without foundation.

5       "To satisfy the requirement of authenticating or identifying an item of evidence, the

6  proponent must produce evidence sufficient to support a finding that the item is what the

7  proponent claims it is." Fed. R. Evid. 901(a). Authentication can occur by considering "[t]he

8  appearance, contents, substance, internal patterns, or other distinctive characteristics of the item,

9  taken together with all the circumstances." Fed. R. Evid. 901(b)(4).

10      Defendant has attached Plaintiff's personnel file which included the arbitration clause at

11 issue here. (ECF No. 18-4 at 3, 5.) Other courts have found the declaration of the human

12 resource employees sufficient to authenticate electronic signatures. See Nanavati v. Adecco

13 USA, Inc., 99 F.Supp.3d 1072, 1076 (N.D. Cal. 2014); Langston v. 20/20 Companies, Inc., No.

14 EDCV 14-1360 JGB (SPx), 2014 WL 5335734, at *5-6 (C.D. Cal. October 7, 2014); Jones-

15 Mixon v. Bloomingdale's, Inc., No. 14-cv-01103-JCS, 2014 WL 2736020, at *4 (N.D. Cal. June

16 11, 2014). These records show Plaintiff electronically signed the agreement on January 1, 2012

17 and again on April 4, 2014. (ECF No. 18-4 at 3, 5.)

18      Defendant has submitted the declaration of the Senior Human Resources Manager for

19 Defendant stating that Plaintiff electronically signed these documents. (Decl. of Amanda Hart ¶¶

20 1, 3, ECF No. 18-3.) Also included is the declaration of Senior Human Resources Manager

21 Catherine Edge explaining the new hire onboarding and current employee processes for

22 completing company policies. (Decl. of Catherine Edge ¶¶ 4-13, ECF No. 18-5.) There are 20

23 discrete steps that a new hire has to follow and complete which the new hire does in the training

24 room on a computer. (Id. at ¶ 4.) These steps have to be completed in order and the new hire

25 cannot proceed to the next step until all the previous steps are completed. (Id.) The arbitration

26 agreement was the tenth step that was completed in the new hire process. (Instructions, ECF No.

27 18-6 at 3.)

28      Plaintiff does not claim that he never signed an arbitration agreement, but states that he

does not remember signing the agreement. The evidence presented by Defendants shows that the documents were completed on January 1, 2012 and contain Plaintiff's electronic signature. Plaintiff also electronically signed the JCPenney Associate Parking agreement on November 29, 2012, and the attendance policy on June 23, 2006 and November 29, 2012. (ECF No. 18-6 at 15, 17, 19.) To access the associate kiosk which is accessible from any computer, the employee is required to enter his security number and password. (ECF No. 18-5 at ¶ 13; ECF No. 18-6 at 23.) Plaintiff was provided with his unique employee identification number and he created a password when he was hired. (ECF No. 18-5 at ¶ 11.)

Plaintiff relies on Ruiz v. Moss Bros. Auto Group, Inc., 232 Cal.App.4th 836 (2014), to argue that Defendant has not submitted sufficient evidence to authenticate his signature. In Ruiz, the declarant did not explain how she came to the conclusion that the plaintiff's signature was on the document. 232 Cal. App.4th at 843. Here, Ms. Edge explained that there are 20 discrete steps that the employee must do during the onboarding process and each step must be completed in order. (ECF No. 18-5 at ¶ 4.) The arbitration agreement was completed as step ten in the process and the further onboarding steps by Plaintiff were also completed. (Id. at ¶¶ 7, 8.) Further, Plaintiff's electronic signature was also on other documents, including the discount card policy which Plaintiff and his family used more than 150 times since January 1, 2012. (Id. at ¶ 9.) Plaintiff also was required to re-sign the arbitration agreement after he was promoted on April 6, 2014. (Id. at ¶ 10.) If Plaintiff had not signed this form his manager would have been notified. (Id. at ¶ 12.) The Court finds that Defendant has submitted sufficient evidence to establish that Plaintiff electronically signed the arbitration agreements at issue in this action.

2.    Mutual Assent

Plaintiff also argues that there is not mutual assent to the contract term. Contract based challenges to an agreement to arbitrate are governed by state law. Cox v. Ocean View Hotel Corp., 553 F.3d 1114, 1122 (9th Cir. 2008). Under California law a contract requires mutual assent, sufficiently definite contractual terms, and consideration. Rockridge Trust v. Wells Fargo, N.A., 985 F.Supp.2d 1110, 1142 (N.D. Cal. 2013). Here, Plaintiff challenges the existence of the contract only on the ground that there was no mutual assent.

1    "Contract formation requires mutual consent, which cannot exist unless the parties agree

2    on the same thing in the same sense."  Rockridge Trust, 985 F.Supp.2d at 1142 (quoting

3    Bustamante v. Intuit, Inc., 141 Cal.App.4th 199, 208 (2006) (quoting Cal. Civ. Code §§ 1580,

4    1550, 1565)).  "Mutual assent is determined under an objective standard applied to the outward

5    manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts,

6    and not their unexpressed intentions or understandings."  Serafin v. Balco Properties Ltd., LLC,

7    235 Cal. App. 4th 165, 173 (2015), review denied (June 10, 2015) (citations omitted).  Although

8    Plaintiff now contends that he did not agree to arbitration, the Binding Mandatory Arbitration

9    Agreements which Plaintiff signed are substantially identical in both instances.    These

10   agreements state:

> My employer and I voluntarily agree to resolve disputes arising from, related to, or asserted after the termination of my employment through mandatory binding arbitration under the JCPenney Rules of Employment Arbitration.  My employer and I voluntarily waive the right to resolve these disputes in courts.
>
> I acknowledge that I was given the opportunity to review the Rules and consult with an attorney prior to signing this Agreement.  I understand that I will, however, be bound by this Agreement and the Rules once I sign electronically, regardless of whether I have reviewed the Rules, or consulted with an attorney, prior to signing.  I hereby agree to arbitrate disputes covered by and pursuant to the JCPenney Rules of Employment Arbitration.
>
> Check the box below and click on the Accept button below to electronically sign this form.  By signing this form, you agree to the Binding Mandatory Arbitration Agreement.[3]

19   (ECF No. 18-4 at 3, 5.)

20       Courts have long upheld agreements where a contract was formed when a plaintiff

21   clicked on a button to assent to an agreement in which the terms themselves are accessed by a

22   hyperlink.  See Levin, 2015 WL 7529649, at 7-8 (listing cases); Mohamed v. Uber Technologies,

23   Inc., __ F.Supp.3d __, 2015 WL 3749716, at *7 (N.D. Cal. June 9, 2015) (affirming contract

24   where plaintiff had opportunity to review relevant terms of hyperlinked agreements, the

25   existence of the relevant term was conspicuous in the application screen, and the plaintiff was

26   required to click through the screen to continue using the application.).

27

28   [3]The Court has reviewed the language and finds only differences in capitalization of JCPenney and that the last line is not visible on the page provided for the agreement signed following Plaintiff's promotion.

1   Under California law, Plaintiff cannot avoid the terms of the contract by asserting that he
2   failed to read it before signing.  Mohamed, 2015 WL 3749716 at *7.  Here, Defendant has
3   presented evidence that Plaintiff was required to complete onboard training when he was hired.
4   Plaintiff's onboard training was completed on January 1, 2012, and he electronically signed all
5   twenty steps of the onboarding process, including the mandatory arbitration agreement.

6   Although Plaintiff now argues that he did not agree to arbitration, the Court finds that he
7   did sign the separate Binding Mandatory Arbitration Agreement on two occasions.  The language
8   on the page clearly informed Plaintiff of the purpose of the document.  The page directed
9   Plaintiff to click on the link to the arbitration agreement and read it before signing.  This is
10  sufficient to find adequate notice of the contract terms "because courts have long upheld
11  contracts where the consumer is prompted to examine terms of sale that are located somewhere
12  else."  Mohamed, 2015 WL 3749716, at *7.

13  The Court finds that the parties entered into a valid and binding agreement to arbitrate
14  disputes covered by and pursuant to the Rules of Employment Arbitration.

15  **B.     Unconscionability**

16  The Court next considers Plaintiff's argument that if a contract exists then the arbitration
17  clause is unconscionable.

18  Where an arbitration clause exists there is a presumption of arbitrability and all doubts
19  should be resolved in favor of arbitration.  AT&T Techs., Inc. v. Commc'ns Workers of Am.,
20  475 U.S. 643, 650 (1986).  This presumption is particularly strong where the agreement between
21  the parties includes a broad arbitration clause.  Levin, 2015 WL 7529649, at 2 (citing AT&T
22  Techs., Inc., 475 U.S. at 650).  The Court has the duty to interpret the agreement to determine
23  whether the parties intended to arbitrate the alleged grievances.  AT & T Techs., 475 U.S. at 651.
24  Arbitration agreements are to be placed on an equal footing with other contracts and should be
25  enforced according to their terms.[4]  Concepcion, 563 U.S. at 339.

26

27  [4] Recently, the Supreme Court issued a decision in Directv v. Imburgia, __ S.Ct. __, 2015 WL 8546242 (December
28  14, 2015), finding that California's interpretation of the phrase "law of your state" in invalidating the waiver of class
    action claims in arbitration agreements did not place arbitration agreements on equal footing with other contracts
    and conflicts with the FAA.  Id. at *8.

"Generally applicable contract defenses, such as fraud, duress, or unconscionability, apply to arbitration agreements." Levin, 2015 WL 7529649, at *3.  Under California law a court may refuse to enforce a contract or limit a clause of the contract that is found to be unconscionable at the time it was made.  Cal. Civ. Code § 1670.5(a).  California will not enforce a contract of adhesion where the contract or a provision do not fall within the reasonable expectations of the weaker party and, "a contract or provision, even if consistent with the reasonable expectations of the parties, will be denied enforcement if, considered in its context, it is unduly oppressive or 'unconscionable.' " Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal.4th 83, 113 (2000) (abrogated on other grounds by Concepcion, 563 U.S. 333).  Both the reasonable expectations and the oppressive limitations are aspects of unconscionability. Armendariz, 24 Cal.4th at 114.

"A finding of unconscionability requires a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." Concepcion, 563 U.S. at 340 (internal punctuation and citations omitted).  While unconscionability requires a showing of procedural and substantive unconscionability, both "need not be present in the same degree." Levin, 2015 WL 7529649, at 3 (quoting Armendariz, 24 Cal.4th at 114).  Since, "California law utilizes a sliding scale to determine unconscionability—greater substantive unconscionability may compensate for lesser procedural unconscionability." Chavarria v. Ralphs Grocery Co., 733 F.3d 916, 922 (9th Cir. 2013).  Therefore, both procedural and substantive unconscionability must be present for a contract to be unconscionable under California law.  Serafin, 235 Cal.App.4th at 178.  The Court will address each of these prongs.

1.    Procedural Unconscionability

Plaintiff argues that the provision is procedurally unconscionable because he was not aware that he signed the agreement and he was not provided with the opportunity to seek legal advice prior to signing the provision.  "Procedural unconscionability concerns the manner in which the contract was negotiated and the respective circumstances of the parties at that time, focusing on the level of oppression and surprise involved in the agreement." Chavarria, 733 F.3d

at 922.  Oppression addresses that the weaker party's absence of choice and unequal bargaining power results in no real negotiation.  Id.  Surprise addresses the extent that the contract clearly addresses the terms along with the expectations of the weaker party.  Id.

Plaintiff argues that the contract is procedurally unconscionable because, although the agreement states that the employee could seek legal advice, no such right exists as the employee is forced to sit in a room on the first day of employment and sign the documents as a mandatory condition of employment.  While the Court considers that there is an opportunity for the employee to seek legal advice, it is unlikely that any employee would stop the onboarding process to contact an attorney regarding any documents that were presented during the process.  As an employee, Plaintiff was required to sign the agreement prior to being able to complete the remaining steps in the onboarding process.  Similar agreements have been found to be procedurally unconscionable under California law where the arbitration agreement was imposed upon the employee as a condition of employment.  Chavarria, 733 F.3d at 923 (quoting Davis v. O'Melveny & Myers, 485 F.3d 1066 (9th Cir. 2007) ("where ... the employee is facing an employer with 'overwhelming bargaining power' who 'drafted the contract and presented it to [the employee] on a take-it-or-leave-it basis,' the clause is procedurally unconscionable").

Plaintiff additionally argues that he was not aware that he signed the document. However, as discussed above, Defendant has presented sufficient evidence to authenticate Plaintiff's electronic signature on the document.  Further, the screen which was presented to Plaintiff for signature indicates that the document is a Binding Mandatory Arbitration Agreement and clearly states that the parties "agree to resolve disputes arising from, related to, or asserted after the termination of my employment through mandatory binding arbitration under the JCPenney Rules of Employment Arbitration" and "voluntarily waive the right to resolve these disputes in courts."  (ECF No. 18-4 at 3, 5.)  The documents show that Plaintiff was informed at the time of signing the agreement that he was agreeing to arbitrate any employment claims that fell within the agreement.  The Court finds that there was no element of surprise involved.

Accordingly, the Court does find that the agreement has some level of procedural unconscionability.

1         2.      <u>Substantive Unconscionability</u>

2         In order to find the contract unconscionable, Plaintiff must also show that the arbitration

3  policy is substantively unconscionable under the California law which occurs when the provision

4  "is unjustifiably one-sided to such an extent that it 'shocks the conscious.' "  <u>Chavarria</u>, 733 F.3d

5  at 923 (citations omitted).  Plaintiff argues that the agreement is substantively unconscionable

6  because it bars multi-party litigation, requires the employee to acknowledge that he had the

7  opportunity to consult an attorney which is not true, the rules of arbitration are not provided in

8  the same document, provides that the employee cannot seek certain injunctive relief in

9  arbitration, and the arbitrator has sole authority to determine whether any temporary restraining

10 order or preliminary injunction shall remain in place.

11        However, Plaintiff's arguments do not demonstrate that the provision is so unjustifiably

12 one-sided that it shocks the conscious.  California has "five minimum requirements for the

13 lawful arbitration of [] rights pursuant to a mandatory employment arbitration agreement.  Such

14 an arbitration agreement is lawful if it (1) provides for neutral arbitrators, (2) provides for more

15 than minimal discovery, (3) requires a written award, (4) provides for all of the types of relief

16 that would otherwise be available in court, and (5) does not require employees to pay either

17 unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration

18 forum.  <u>Armendariz</u>, 24 Cal.4th at 102; <u>Pinela v. Neiman Marcus Group, Inc.</u>, 238 Cal.App.4th

19 227, 250 (2015).

20        The agreement here provides that the arbitrator is selected from a neutral arbitration

21 service provider and JCPenney pays all arbitration fees.  (JCPenney Rules of Employment

22 Arbitration 1, ECF No. 18-4.)  Plaintiff has not shown that he will be subjected to a biased

23 arbitrator or to any arbitration fees or expenses under the arbitration agreement.

24        The agreement also states that the arbitrator may grant any remedy that could be granted

25 by a judge, including damages and permanent injunctive relief.  (<u>Id.</u> at Rule 3(C)(4).)  After the

26 answer is filed, the parties may obtain discovery of any non-privileged information and records

27 reasonably likely to lead to admissible evidence by the methods permitted by the Federal Rules

28 of Civil Procedure.  (<u>Id.</u> at Rule 13.)  Through the agreement, Plaintiff is able to receive more

1  than minimal discovery and all relief that is available in Federal Court is available through

2  arbitration.

3       Since the arbitrator is also required to mail a final award that is supported by findings of

4  fact and conclusions of law to the parties following the conclusion of the arbitration hearing, all

5  five minimum requirements for a valid arbitration agreement are met.  (Id. at Rule 18.)

6       Plaintiff argues that the requirement that an employee cannot bring representative actions

7  in itself is unconscionable.  The Court finds that even if such a provision is not allowed under

8  California law as to Plaintiff's representative claims, it would be severable.  The Court may

9  refuse to enforce a contract term that is unenforceable.  Mohamed, 2015 WL 3749716, at *12;

10  see also Levin, 2015 WL 7525949, at *9 (citing Dotson v. Amgen, Inc., 181 Cal.App.4th 975,

11  986 (2010) (decision to sever offending term from contract is within discretion of the trial

12  court).)  Under California law, a contract that is permeated with unconscionability cannot be

13  enforced, but where an unconscionable provision is severable the contractual relationship should

14  be maintained.  Armendariz, 24 Cal.4th at 123-25.

15       Here, the arbitration agreement provides that if any rule or subpart of the arbitration

16  agreement is found to be unenforceable by any court or arbitrator, that part shall be stricken from

17  the agreement.  (Id. at Rule 21(B).)  As the provision prohibiting representative actions would be

18  severable from the agreement, the Court finds that the arbitration agreement is not substantively

19  unconscionable under California law.

20       Plaintiff does not argue that only the employee is required to submit grievances to

21  arbitration and the agreement itself provides that all claims shall be submitted to arbitration

22  except claims

23      1. for unemployment compensation;
    2. for workers compensation (except claims for retaliation for exercising rights
24      under workers compensation laws).
    3. under any pension or welfare benefit plan (except lost benefits may be
25      recoverable as damages in an arbitration Case).
    4. under the National Labor Relations Act and similar laws involving unions.

26

27  (ECF No. 18-4 at Rule 3.)  Under this provision of the agreement both the employer and the

28  employee are required to submit grievances to arbitration.

1    Plaintiff has not shown that the arbitration agreement is so one-sided that it would shock

2 the conscious and the term prohibiting representative actions, if it is unlawful, would be clearly

3 severable.  In balancing the degree of procedural unconscionability, the Court considers that the

4 degree of procedural unconscionability found would make the agreement unenforceable only if

5 the degree of substantive unconscionability is high.  Serafin, 235 Cal.App.4th at 185.  As the

6 Court finds that the potentially unconscionable provision is severable, no substantive

7 unconscionability exists.  Balancing the procedural and substantive unconscionability, the Court

8 finds that the agreement is not unconscionable and that the arbitration agreement is enforceable.[5]

9    3.    PAGA Claims

10    Plaintiff argues that the provision prohibiting representative actions is unlawful.  The

11 arbitration agreement provides that there may be only one claimant per case and the parties

12 waive their right to bring class and representative actions.  (ECF No. 18-4 at Rule 8(A).)  The

13 party may challenge the efficacy of this waiver by filing a class or representative action in court.

14 (Id. at Rule 8(B).)  The opposing party may then file a motion to dismiss or stay the action

15 pending arbitration and have the court determine whether the waiver bars the class or

16 representative action before it.  (Id. at Rule 8(C).)  The parties do not dispute that the waiver of

17 representative actions covers representative actions under the PAGA.  Therefore, in analyzing

18 the waiver of representative claims, the Court considers that the PAGA and representative claims

19 to be the same for the purpose of this motion.

20    Under the PAGA an aggrieved employee can bring a civil action personally and on behalf

21 of other current or former employees to recover for violations of the California Labor Code.  Cal.

22 Lab. Code § 2699(a).  The statute provides that seventy-five percent of the civil penalties

23 recovered shall go to the Labor and Workforce Development Agency and the remaining twenty-

24 five percent goes to the aggrieved employees.  Cal. Lab. Code § 2699(i).

25

---

26 [5] In support of Defendant's argument that the agreement is not unconscionable, Defendant requests that the Court take judicial notice that the state court found the identical agreement was not unconscionable in Richardson v.

27 JCPenney Corporation, No. 114CV259276 (Santa Clara Sup. Ct. April 15, 2014).  Judicial notice may be taken "of court filings and other matters of public record."  Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6

28 (9th Cir. 2006); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).  The Court grants Defendant's request to take judicial notice of the certified public record provided by Defendant.

1    To bring a PAGA claim, the employee is required to give written notice of the alleged
2  Labor Code violations to the employer and the Labor and Workforce Development Agency
3  which includes the facts and theories that support the alleged violation.   Cal. Lab. Code §
4  2699.3(a)(1).   The agency is to notify the employer and aggrieved employee if it does not intend
5  to investigate the alleged violations within thirty days.   Cal. Lab. Code § 2699.3(a)(2)(A).   If no
6  notice is provided within 33 calendar days, the aggrieved employee may commence a civil action
7  under the PAGA.   Id.   An employee may amend an existing complaint within sixty days of the
8  time periods specified in section 2699.3.   Cal. Lab. Code § 2699.3(a)(2)(C).

9    PAGA only allows the aggrieved employees to recover statutory penalties for violations
10 of the Labor Code.   Iskanian v. CLS Transp. Los Angeles, LLC, 59 Cal.4th 348, 381 (2014).
11 These civil penalties are distinct from the statutory damages which an aggrieved employee may
12 be entitled to in his individual capacity.   Iskanian, 59 Cal.4th at 381.   Therefore, a PAGA action
13 is a type of qui tam action.   Id. at 382.

14    In Iskanian, the California Supreme Court found that "an employee's right to bring a
15 PAGA action is unwaivable."   Id. at 383.   Therefore, an "employment agreement [that] compels
16 the waiver of representative claims under the PAGA . . . is contrary to public policy and
17 unenforceable as a matter of state law.   Id. at 384.   The Iskanian court further found that
18 California's public policy prohibiting waiver of PAGA claims did not interfere with the FAA's
19 goal of promoting arbitration as a forum for alternative dispute resolution and therefore the FAA
20 did not preempt PAGA.   Id. at 389.

21    On appeal in Sakkab v. Luxottica Retail North America, Inc., 803 F.3d 425 (9th Cir.
22 2015), a divided panel of the Ninth Circuit found that the rule announced in Iskanian "does not
23 stand as an obstacle to the accomplishment of the FAA's objectives and is not preempted."[6]   803

24
[6] The Court takes judicial notice that Appellee Luxottica Retail North America's Petition for Rehearing En Banc is
25 currently pending before the Ninth Circuit.   Sakkab v. Luxottica Retail N. America, No. 13-55184 (9th Cir. Nov. 11,
    2015).   Defendant requests that the Court require Plaintiff to arbitrate his individual and class claims and defer
26 ruling on the arbitrability of the PAGA claims until after the Ninth Circuit issues the en banc decision in Sakkab.
    Defendant is essentially requesting the Court stay the motion until the decision in Sakkab.

27    "The District Court has broad discretion to stay proceedings as an incident to its power to control its own
    docket."   Clinton v. Jones, 520 U.S. 681, 706 (1997).   This "power to stay proceedings is incidental to the power
28 inherent in every court to control the disposition of the causes on its docket with economy of time and effort for

1    F.3d at 427.   Therefore, under the state of the law today, the waiver of representative PAGA

2    claims in the arbitration agreement is not valid.

3         The agreement itself contemplates that a court could find that the waiver of a class or

4    representative action could be found to be invalid.   The agreement states that "[t]o the extent

5    permitted by law, the Parties waive their rights to bring class and representative actions."   (ECF

6    No 18-4 at Rule 8A.)   The parties are permitted to challenge this waiver by filing a class or

7    representative action in court.   (Id. at Rule 8B.)   The opposing party can agree to the right to file

8    the action by voluntarily going forward with the litigation or may file a timely motion to dismiss

9    or stay the lawsuit pending arbitration and have the court determine whether the waiver bars the

10   action.   (Id. at Rule 8CD.)   Further, the agreement provides that if in the course of a case, a Rule

11   or subpart is deemed unenforceable, "it will be considered stricken from these Rules insofar as

12   that particular Case is concerned."   (Id. at Rule 21B.)   The Court finds that the waiver of

13   representative actions is therefore severable from the agreement.

14        Since the waiver of representative claims is severable, the Court must consider whether

15   the parties agreed to arbitrate the PAGA claims raised in the complaint.   Plaintiff argues that

16   Sakkab held that PAGA claims cannot be forced into arbitration.   However, both Sakkab and

17   Iskanian recognized that the PAGA claims could be included in an arbitration agreement.

18   Sakkab, 803 F.3d at 439-441; Iskanian, 59 Cal.4th at 391-92.   The issue of whether the parties

19   agreed to arbitrate such claims or if they were to be resolved through litigation and who would

20   _____

     itself, for counsel, and for litigants."   Landis v. N. Am. Co., 299 U.S. 248, 254 (1936).   Under this power, the court

21   may stay an action pending resolution of another.   Leyva v. Certified Grocers of California, Ltd., 593 F.2d 857, 863-
     64 (9th Cir. 1979).   In addressing whether to stay an action for resolution of pending proceedings in a separate case,

22   the court must weigh the competing interests and maintain an even balance.   Landis, 299 U.S. at 254-55.   In
     weighing these interests the court may consider "the possible damage which may result from the granting of a stay,

23   the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice
     measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected

24   to result from a stay."   Lockyer v. Mirant Corp., 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting CMAX, Inc. v. Hall,
     300 F.2d 268 (9th Cir.1962).)

25        In this instance, the Ninth Circuit has issued a decision finding that California's rule that an employee

26   cannot waive PAGA claims does not conflict with the FAA.   While Defendant argues that the Circuit will likely
     decide to hear Sakkab en banc, Defendant has not argued any hardship or inequity that would result from proceeding

27   with the disposition of the current motion.   The possibility that there may be an en banc hearing is not sufficient
     ground by itself for the Court to defer ruling on the current motion.   Levin, 2015 WL 7529649, at *6.   At this time,

28   the Court will require the parties to brief the issue of whether the PAGA claims are included in the arbitration
     agreement.

resolve a dispute on the issue has not been addressed by the parties.  Accordingly, the Court shall reserve decision on the motion to arbitrate the PAGA claims and require the parties to file supplemental briefing addressing whether the Mandatory Arbitration Agreement requires arbitration of Plaintiff's PAGA claim and who would decide this issue if it is disputed.

## IV.

### CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED that:

1.      Defendant's motion to compel arbitration is GRANTED IN PART and Plaintiff is required to arbitrate his individual claims;

2.      The parties shall file supplemental briefing addressing whether the PAGA claims are required to be arbitrated under the Mandatory Arbitration Agreement:

a.      Defendant's supplemental brief shall be filed on or before January 15, 2016;

b.      Plaintiff's supplemental opposition shall be filed on or before January 29, 2016; and

c.      Defendant's reply, if any, shall be filed on or before February 5, 2016;

d.      Oral argument on the remaining issue is set before the undersigned on February 17, 2016, at 10:00 a.m. in Courtroom 9.

IT IS SO ORDERED.

Dated:   **December 15, 2015**

UNITED STATES MAGISTRATE JUDGE

15